In the Matter of the CLAIM OF ROBERT SHANNON, Respondent, v. GRUMMAN AIRCRAFT et al., Appellants, and SPECIAL DISABILITY FUND, Respondent. WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, November 12, 1970.

*Jones & Kafka (Anne G. Kafka* of counsel), for appellants.

*Markhoff, Gottlieb, Lazarus, D'Auria, Taylor & Maldonado* for claimant-respondent.

*George Cholet* for Special Fund, respondent.

*Louis J. Lefkowitz, Attorney-General (Harry Rackow* and *Daniel Polansky* of counsel), for Workmen's Compensation Board, respondent.

HERLIHY, P. J. This is an appeal by the employer and its insurance carrier from decisions of the Workmen's Compensation Board, filed October 1, 1969 and March 16, 1970.

Claimant began work for Grumman Aircraft as a template maker in December, 1963. During the course of his work claimant was exposed to copious amounts of fiberglass particles, resin dust and a bonding agent. After eight months on the job, claimant experienced coughing spells and had difficulty breathing and similar symptoms appeared in other employees engaged in similar work. He was forced to stop work on November 4, 1964 because of the increasing severity of his condition. The consensus diagnosis was interstitial fibrosis. Claimant had been

X-rayed prior to starting employment and had no abnormalities nor any indications of any lung problems.

The Workmen's Compensation Board determined that claimant was suffering from interstitial fibrosis of the lungs and organizing pneumonitis, and that the conditions resulted from the exposure in the occupation.

The record establishes that the fibrosis is commonly known as idiopathic because the medical profession has never established any particular cause for such fibrosis. In this particular case the claimant took the position that his fibrosis condition was caused by exposure to copious amounts of irritant material in the form of fiberglass dust and resin dust.

The appellants contend that there was not substantial evidence to support the board's finding, there being no competent testimony establishing a link between claimant's disease and his occupation.

The case has similarity to *Matter of Miller* v. *National Cabinet Co.* (8 N Y 2d 277) in that the disease or condition has no known common causal agent or factor. However, the fact that the disease is idiopathic does not preclude establishing causality from the employment, either by direct proof that a condition of the employment with reasonable medical certainty could produce the disease or that statistically the incidence of such disease in the particular employment is sufficiently high to establish a reasonable probability that some condition of the employment is a causal factor, albeit there might be other unknown causal factors. In *Miller* there was a complete lack of scientific understanding of the cause of the disease which differentiates the present circumstances. (See, generally, *Matter of Miller* v. *National Cabinet Co., supra.*)

In the present case the employer's medical director (Benenati) noted that similar symptoms appeared in other employees (presumably in the same plant) and he instituted a statistical survey to be run on cases at the plant. However, the director left the employment prior to the completion of the survey and the employer and carrier did not submit the results of such survey in evidence. It appeared that such a survey was made and would be of great importance to the solution of the issues.

The particular issue is whether or not there is substantial medical evidence to support the finding of causality as to the fiberglass and resin dust. The record contains a report to the board by the employer's medical director which stated that the claimant " was exposed to copious amounts of irritant material in the form of fibreglas dust and resin dust " and further, that the claimant was exposed to epoxy materials (resin) " definitely

known to be irritants ''. In a report dated May 5, 1965, he further stated: '' It appears to me that the chronology of the development of his illness is very strong indication that a causal relationship exists between the pulmonary disease the exposure to fibreglas dust.'' These reports and the testimony by the employer's medical director are substantial evidence to support the board's findings that '' claimant was exposed to copious amounts of fiberglass and resin dusts in his employment; that these conditions are irritants ''.

An impartial specialist filed a report — *and testified in support thereof* — concluding: '' 1. The claimant is suffering from idiopathic interstitial fibrosis of the lungs which is causing partial disability. 2. There is no evidence of pneumoconiosis or of any other occupational disease of the lungs.'' '' Pneumoconiosis '' is defined in Taber's Cyclopedic Medical Dictionary (7th ed.) as '' A condition of the respiratory tract due to inhalation of dust particles. An occupational disorder such as that caused by mining or stonecutting.'' The report dated December 23, 1964 of the Nassau Hospital stated that following an exploratory thoracotomy and lung biopsy, the diagnosis was '' chronic interstitial and organizing pneumonitis ''. The board was not obligated to accept the conclusion of the impartial specialist.

In reference to the fibrosis the claimant's witness, Dr. Catalano, testified: '' The exact etiology is difficult to nail down. There are many causes that can cause that type of reaction. It is a reaction to injury, and that is how the lung reacts to an injury — may be a chronic infection, may be a chronic exposure to certain elements. It is in that area.'' While this witness used the term idiopathic in referring to this fibrosis, he qualified it by saying that idiopathic simply means that the exact cause and relationship are not definitely known. When inquiry was made of him as to whether or not there are many causes of the condition, he replied: '' Very many, and many that we don't know of ''. It appears from this doctor's testimony that the only thing he considers to be unknown about the etiology of this condition is the reason why one person could contract the disease by exposure to irritants and another person exposed to the same irritants does not contract the condition. '' Etiology '' is defined in Taber's Cyclopedic Medical Dictionary (7th ed.) as '' the study of the causes of disease which result from an abnormal state producing pathological conditions.'' While the doctor's testimony was indefinite, it can be fairly summarized by stating that while he was not in an '' absolute position '', there was '' presumptive evidence '' that the exposure to the noxious

"evidence" causing the claimant's condition could have resulted from the nature of the employment.

Under such circumstances, while there was a dispute medically as to the cause of the claimant's condition, the board was justified in finding an occupational disease. A reading of the record in its entirety is convincing that there is substantial evidence to sustain the finding. If the present case requires precedent, there are many: *Matter of Ernst* v. *Boggs Lake Estates* (12 N Y 2d 414); *Matter of Zaepfel* v. *E. I. du Pont de Nemours & Co.* (309 N. Y. 962); *Matter of Makofske* v. *Republic Aviation Co.* (21 A D 2d 948); *Matter of Hayden* v. *M & R Linoleum & Carpet Co.* (24 A D 2d 788, mot. for lv. to app. den. 17 N Y 2d 418); *Matter of Toritto* v. *General Instrument Corp.* (28 A D 2d 752, mot. for lv. to app. den. 20 N Y 2d 644).

The decisions should be affirmed, with costs to the Workmen's Compensation Board.

STALEY, JR., GREENBLOTT, COOKE and SWEENEY, JJ., concur.

Decisions affirmed, with costs to the Workmen's Compensation Board.